## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WESCO INC., et al.,

                    Plaintiffs,

     v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN MUTUAL INSURANCE
COMPANY,

                  Defendant.

Case No. 2:24-cv-12986-DPH-DRG

Judge: Hon. Denise Page Hood

Magistrate Judge: Hon. David R. Grand

**ORAL ARGUMENT REQUESTED**

## DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company ("BCBSM"), by its undersigned counsel of record, submits this Motion to Dismiss, with prejudice, Plaintiffs Wesco, Inc.'s and Utility Workers Union of America National Health and Welfare Fund's Complaint. Specifically, BCBSM seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

In support of this Motion, BCBSM relies upon the authorities and arguments set forth in the incorporated brief, as well as its attachments.

As required by Local Rule 7.1(a)(A)(2), BCBSM's counsel conferred with counsel for both Plaintiffs and explained the nature of the motion and its legal basis. *See* Exhibit 1. BCBSM did not obtain concurrence in the relief sought.

Dated: January 28, 2025

Respectfully submitted,

*/s/ Sarah L. Cylkowski*
Sarah L. Cylkowski (P75952)
Alexandra C. Markel (P81705)
**BODMAN PLC**
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
T: (313) 259-7777
F: (313) 393-7579
scylkowski@bodmanlaw.com
amarkel@bodmanlaw.com

Justin W. Bernick (*admitted in E.D. Mich.*,
Washington, D.C. Bar No. 988245)
Jennifer Fleury (*admitted in E.D. Mich.*,
Washington, D.C. Bar No. 187503)
Molly Pallman (*admitted in E.D. Mich.*,
Washington, D.C. Bar No. 1617494)
**HOGAN LOVELLS US LLP**
555 13th Street, NW
Washington, DC 20004
T: (202) 637-5600
F: (202) 637-5910
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com
molly.pallman@hoganlovells.com

Michelle R. Heikka (P66122)
**BLUE CROSS BLUE SHIELD OF MICHIGAN**
600 East Lafayette, Suite 1925
Detroit, MI 48226
T: 313-983-2640
mheikka@bcbsm.com

*Counsel for Defendant Blue Cross Blue
Shield of Michigan Mutual Insurance
Company*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| WESCO INC., et al., | |
| Plaintiffs, | |
| v. | Case No. 2:24-cv-12986-DPH-DRG |
| BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY, | Judge: Hon. Denise Page Hood |
| | Magistrate Judge: Hon. David R. Grand |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

# MEMORANDUM IN SUPPORT OF BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF ISSUES PRESENTED.................................................. vi

MOST CONTROLLING/PERSUASIVE AUTHORITIES .................................... vii

INTRODUCTION ............................................................................... 1

BACKGROUND ................................................................................ 4

LEGAL STANDARD........................................................................... 9

ARGUMENT .................................................................................... 9

    I.      Plaintiffs Fail to Allege a Bundling Claim...........................10

    II.     Plaintiffs Fail to Allege Antitrust Injury. ............................16

    III.    Plaintiffs Fail to Allege a Traditional Tying Claim. ...........20

    IV.    Plaintiff Wesco Fails to Allege an Injury in Fact................21

    V.     Plaintiffs' Claims are Time-Barred....................................22

CONCLUSION ................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*,
  333 F. App'x 994 (6th Cir. 2009) ........................................................3, 4, 10, 25

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd.
  of Podiatric Surgery*,
  185 F.3d 606 (6th Cir. 1999) .............................................................................10

*Anesthesia Assocs. of Ann Arbor, PLLC v. Blue Cross Blue Shield of
  Mich.*,
  No. 20-cv-12916, 2021 WL 4169711 (E.D. Mich. Sept. 14, 2021) ...................17

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
  No. 16-cv-00923, 2017 WL 6102804 (N.D. Cal. Oct. 10, 2017)........................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................9

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)...............................................................................2, 11, 18

*Bearden v. Ballad Health*,
  967 F.3d 513 (6th Cir. 2020) .......................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................9

*Brooke Grp. Ltd. v. Brown Williamson Tobacco Corp.*,
  509 U.S. 209 (1993).....................................................................................*passim*

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,
  429 U.S. 477 (1977)........................................................................................3, 17

*Cargill, Inc. v. Monfort of Colo, Inc.*,
  479 U.S. 104 (1986)...........................................................................................17

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) .............................................................................12

ii

*Choh v. Brown Univ.*,
  23-cv-00305, 2024 WL 4465476 (D. Conn. Oct. 10, 2024) .............................24

*Collins Inkjet Corp. v. Eastman Kodak Co.*,
  781 F.3d 264 (6th Cir. 2015) ......................................................................*passim*

*Eastman v. Quest Diagnostics Inc.*,
  No. 15-cv-00415, 2016 WL 1640465 (N.D. Cal. Apr. 26, 2016) ......................14

*Eichman v. Fotomat Corp.*,
  880 F.2d 149 (9th Cir. 1989) ..............................................................................24

*Fox v. Saginaw Cnty.*,
  67 F.4th 284 (6th Cir. 2023) ...............................................................................22

*In re Google Digital Advert. Antitrust Litig.*,
  721 F. Supp. 3d 230 (S.D.N.Y. 2024) .................................................................24

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984).................................................................................................20

*Madison Square Garden, L.P. v. Nat'l Hockey League*,
  No. 07-cv-8455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) .........................24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).............................................................................................12

*Midwest Agency Servs., Inc. v. JP Morgan Chase Bank, N.A.*,
  No. 09-165, 2010 WL 935450 (E.D. Ky. Mar. 11, 2010) ...................................21

*N. Pac. Ry. Co. v. United State*s,
  356 U.S. 1 (1958).................................................................................................20

*N.W.S. Mich., Inc. v. Gen. Wine & Liquor Co.*,
  58 F. App'x 127 (6th Cir. 2003) ................................................................3, 4, 17

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) ...............................................................9, 17, 22

*Norman v. FCA US, LLC*,
  696 F. Supp. 3d 359 (E.D. Mich. 2023) .............................................................22

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) ...................................................................................12

*Peck v. Gen. Motors Corp.*,
  894 F.2d 844 (6th Cir. 1990) ....................................................................23

*Pogue v. Int'l Indus., Inc.*,
  524 F.2d 342 (6th Cir. 1975) ....................................................................19

*Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*,
  No. C09-637Z, 2009 WL 10727790 (W.D. Wash. Nov. 16, 2009) ..................14

*Sharwell v. Best Buy*,
  No. 00-3206, 2000 WL 1478341 (6th Cir. Sept. 26, 2000) ...........................4, 21

*Sheet Metal Workers Nat. Health Fund v. Amgen Inc.*,
  No. 07-5295, 2008 WL 3833577 (D.N.J. Aug. 13, 2008) ..................................19

*Simon and Simon, PC v. Align Tech. Inc.*,
  No. 19-506, 2020 WL 1975139 (D. Del. 2020) .................................................11

*Southaven Land Co. v. Malone & Hyde, Inc.*,
  715 F.2d 1079 (6th Cir. 1983) ..................................................................21

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*,
  821 F.3d 780 (6th Cir. 2016) ....................................................................25

*Strawflower Elecs., Inc. v. Radioshack Corp.*,
  No. 05-0747, 2005 WL 2290314 (N.D. Cal. Sept. 20, 2005)...........................21

*Suture Express, Inc. v. Owens & Minor Distribution, Inc.*,
  851 F.3d 1029 (10th Cir. 2017) ................................................................1, 11

*In re Time Warner Inc. Set-Top Cable Television Box Antitrust Litig.*,
  No. 08 mdl 1995, 2010 WL 882989 (S.D.N.Y. Mar. 5, 2010)...........................21

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) ......................................................................9

*Unigestion Holdings, S.A. v. UPM Tech., Inc.*,
  412 F. Supp. 3d 1273 (D. Or. 2019) .............................................................14

iv

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
    129 F. Supp. 3d 1012 (D. Or. 2015) ...............................................................2, 14

*Z Techs. Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ...........................................................................23, 24

**Statutes**

Mich. Comp. Laws Ann. § 445.781........................................................................23

Mich. Comp. Laws Ann. § 445.784........................................................................10

Michigan Insurance Code Section 500.5208 ...........................................................5

Sherman Act........................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(6) ..........................................................................17, 25

Herbert Hovenkamp, Principles of Antitrust, § 10.4c (West Academic,
    2d ed. 2021) ....................................................................................................15

Phillip E. Areeda and Herbert Hovenkamp, Antitrust Law: An
    Analysis of Antitrust Principles and Their Application (Wolters
    Kluwer, 5th ed. 2025) ..............................................................................13, 15

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.    Should the Court dismiss Plaintiffs' bundling claims because Plaintiffs have not pleaded facts satisfying the Sixth Circuit's discount attribution test?

     **BCBSM's Answer: Yes.**

2.    Should the Court dismiss Plaintiffs' antitrust claims because Plaintiffs have failed to allege antitrust injury?

     **BCBSM's Answer: Yes.**

3.    Should the Court dismiss Plaintiffs' tying claims because Plaintiffs allege that they may purchase third-party administrator ("TPA") services and stop-loss insurance separately?

     **BCBSM's Answer: Yes.**

4.    Should the Court dismiss Wesco's claims because Wesco has not pleaded injury sufficient for antitrust standing?

     **BCBSM's Answer: Yes.**

5.    Should the Court dismiss Plaintiffs' claims because they are time-barred and accrued outside the applicable four-year statute of limitations?

     **BCBSM's Answer: Yes.**

## <u>MOST CONTROLLING/PERSUASIVE AUTHORITIES</u>

*Brooke Grp. Ltd. v. Brown Williamson Tobacco Corp*., 509 U.S. 209 (1993)

*Alt. Richfield Co. v. USA Petroleum Co*., 495 U.S. 328 (1990)

*Collins Inkjet Corp. v. Eastman Kodak Co*., 781 F.3d 264 (6th Cir 2015)

*Bearden v. Ballad Health*, 967 F.3d 513 (6th Cir. 2020)

*NicSand, Inc. v. 3M Co*., 507 F.3d 442 (6th Cir. 2007)

*Z Techs. Corp. v. Lubrizol Corp*., 753 F.3d 594 (6th Cir. 2014)

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc*., 836 F.3d 1171 (9th Cir. 2016)

*Sharwell v. Best Buy*, 2000 WL 1478341 (6th Cir. Sept. 26, 2000)

*Midwest Agency Servs., Inc. v. JP Morgan Chase Bank, N.A*., 2010 WL 935450 (E.D. Ky. Mar. 11, 2010)

*Vesta Corp. v. Amdocs Mgmt. Ltd*., 129 F. Supp. 3d 1012 (D. Or. 2015)

*Arista Networks, Inc. v. Cisco Sys., Inc*., 2017 WL 6102804 (N.D. Cal. Oct. 10, 2017)

*N.W.S. Michigan, Inc. v. Gen. Wine & Liquor Co*., 58 F. App'x 127 (6th Cir. 2003)

## **INTRODUCTION**

Plaintiffs' antitrust claims should be dismissed because the conduct they challenge—above-cost price discounts—is not an antitrust violation.

Plaintiffs allege that Blue Cross Blue Shield of Michigan ("BCBSM") charges customers *less* money when they purchase both third-party administrative ("TPA") services[1] and stop-loss insurance from BCBSM. Plaintiffs spin this discount as a "penalty fee" that a claims processing customer must pay if it purchases stop-loss insurance from a different carrier, and argue that the discount harms competition for stop-loss insurance. Compl. ¶¶ 232-33, PageID.52-53. But "[w]hether viewed as a bundling discount . . . or as a penalty," *Suture Express, Inc. v. Owens & Minor Distribution, Inc.*, 851 F.3d 1029, 1035-36 (10th Cir. 2017), the legal analysis is the same: "[c]ompetitive sellers generally aim to make their products significantly cheaper than their competitors', and there is nothing inherently wrong with doing so via differential pricing." *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 271 (6th Cir. 2015).

As the Supreme Court has repeatedly explained, "[l]ow prices benefit consumers *regardless of how those prices are set*, and so long as they are above predatory levels, they *do not threaten competition*." *Brooke Grp. Ltd. v. Brown*

---

[1]     Defendant BCBSM is not a TPA services provider, but rather provides claims processing services. TPA services will hereinafter be referred to as "claims processing services."

*Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990)) (emphasis added). In other words, "a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs." *Id* at 222. The Sixth Circuit has adopted the Supreme Court's test, holding that bundled discounts only "become[] equivalent to an unlawful tying arrangement when the price discount, as applied to the original price of the tied product, in effect lowers the price of the tied product below the seller's cost"— known as the "discount attribution standard." *Collins Inkjet*, 781 F.3d at 271. In other words, for Plaintiffs' bundled discount claim to survive dismissal, they must allege plausible facts showing that BCBSM sold the "tied" product, here stop-loss insurance, *at a loss* as a result of the price discount. *See, e.g.*, *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012 (D. Or. 2015) (dismissing bundling claim).

Not only have Plaintiffs failed to allege that BCBSM sells stop-loss insurance at a loss, they have affirmatively pleaded the *opposite.* Plaintiffs allege that "BCBSM's stop-loss insurance business is considered *far more profitable* than any other leading stop-loss insurer in the country." Compl. ¶¶ 206-07, PageID.46 (emphasis added). Plaintiffs' allegation and admission that BCBSM sold stop-loss insurance for a profit "makes [BCBSM's] bundled discounts *legal*" because they would not "have the potential to exclude a hypothetical equally efficient [stop-loss

2

provider]." *Collins Inkjet*, 781 F.3d at 273 (emphasis added). BCBSM's discounts could not have excluded other "equally efficient" insurers for an additional reason: Plaintiffs allege that there are at least five companies that sell *both* claims processing services and stop-loss insurance in Michigan today. Compl. ¶ 167, PageID.39.

Plaintiffs' antitrust claims should be dismissed for the simple reason that they do not—and cannot—allege that BCBSM sold stop-loss insurance at a loss. And their claims should be dismissed *with prejudice* because they have affirmatively pleaded facts inconsistent with their theory of liability, and therefore further amendment of the pleadings would be futile. *See ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 997 (6th Cir. 2009) (Ex. 2) (affirming denial of motion to amend when plaintiffs sought to "disavow the allegations of its own complaint solely to survive a motion to dismiss") (citation and quotations omitted).

Plaintiffs' claims should be dismissed for four additional reasons.

*First*, Plaintiffs cannot plausibly allege antitrust injury, which is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *N.W.S. Mich., Inc. v. Gen. Wine & Liquor Co.*, 58 F. App'x 127, 129 (6th Cir. 2003) (Ex. 15) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)) (citation omitted). Plaintiffs' failure to allege that BCBSM's bundled discounts resulted in below-cost pricing

3

"*requires dismissal*" because "only predatory pricing has the requisite anticompetitive effect to establish antitrust injury." *Id*. (emphasis added) (affirming dismissal) (citation and quotations omitted).

*Second*, to the extent that Plaintiffs persist in pursuing a traditional "tying" theory, their antitrust claims fail because customers simply were not required to buy the allegedly tied product—here, stop-loss insurance—in order to buy the alleged tying product, BCBSM's claims processing services. *Sharwell v. Best Buy*, No. 00-3206, 2000 WL 1478341, at *1 (6th Cir. Sept. 26, 2000) (Ex. 10).

*Third,* Plaintiff Wesco fails to plausibly allege antitrust standing because it never purchased claims processing services and stop-loss insurance separately and therefore never had to pay the purported "penalty fee." Compl. ¶¶ 142-45, PageID.34-35.

*Finally*, Plaintiffs failed to bring their claims within the applicable four-year statute of limitations. Plaintiffs allegedly entered into contracts with BCBSM containing the bundled discount in 2011 or 2016. *Id*. ¶¶ 7-8, 142, 150-51, 155, PageID.4-5, 34, 36. At the latest, their claims would have expired four years ago in 2020.

For all these reasons, Plaintiffs' claims should be dismissed with prejudice.

## **BACKGROUND**

BCBSM is a nonprofit health insurer that has been serving customers in the

state of Michigan since 1939. Compl. ¶ 43, PageID.13. BCBSM offers its customers various products, such as health insurance, stop-loss insurance, and administrative services for self-insured customers. *Id*. ¶¶ 95-112, PageID.25-28. Health plans may be categorized as fully-insured or self-funded. *Id.* In a fully-insured plan, the plan sponsor (an employer, for example) pays a premium to BCBSM and BCBSM administers claims and pays the enrollees' healthcare costs. *Id*. In a self-funded plan, the plan sponsor reimburses BCBSM for enrollees' healthcare costs and pays BCBSM an administrative fee to process claims. *Id*.

Because self-funded health plans are ultimately responsible for enrollees' healthcare costs, they may purchase stop-loss insurance to reimburse them for claims above a specified dollar amount. *Id.* Plan sponsors can—and do—purchase claims processing services and stop-loss insurance from different carriers. *Id*. ¶ 157, PageID.37. Both claims processing services and stop-loss insurance are regulated by the state of Michigan. BCBSM, as a nonprofit mutual insurer, is authorized to provide claims processing services to a self-funded group health plan and permitted to offer stop-loss insurance pursuant to Section 500.5208 of the Michigan Insurance Code.

BCBSM sells both claims processing services and stop-loss insurance, along with many other carriers in Michigan. Plaintiffs allege that 38 companies sold claims processing services in Michigan in 2023, and that five of those providers also sold

stop-loss insurance. *Id*. ¶ 167, PageID.39. Customers who purchase BCBSM claims processing services may choose to purchase stop-loss insurance from BCBSM, but are not required to do so. *Id*. ¶ 157, PageID.37. Plaintiffs allege that, beginning in January 2011, BCBSM began offering a discount to customers who purchased both claims processing services and stop-loss insurance from the company. *Id*. ¶¶ 7-10, PageID.4-5. Plaintiffs allege that, if a customer chose to purchase stop-loss insurance from a different carrier, BCBSM would charge the customer $4 more, on a per-contract-per-month ("PCPM") basis, in the form of an administrative fee—an amount that has allegedly increased to $8 today for some customers. *Id*. Plaintiffs acknowledge that BCBSM incurs additional costs if a claims processing customer uses a different stop-loss carrier. *Id*. ¶¶ 223-28, PageID.50-51. Plaintiffs also acknowledge that other insurers were similarly charging fees to TPA customers who used a different stop-loss carrier, or put differently, that those other insurers also offered a discount if the customer purchased both products from them. *Id*. ¶ 228, PageID.51.

According to Plaintiffs, BCBSM's stop-loss insurance is "far more profitable than any other leading stop-loss insurer in the country." *Id*. ¶¶ 204-07, 241-48, PageID.45-46, 55-56 ("BCBSM is consistently generating three times more profit than the average stoploss carrier."). Plaintiffs allege that "an industry standard for measuring a company's profitability in the stop-loss industry is its loss ratio," with

a "lower loss ratio indicat[ing] a more profitable insurance company." *Id*. Plaintiffs allege that BCBSM had a lower loss ratio than the national average and other large stop-loss insurers, including CIGNA and United Health. *Id*. Plaintiffs also allege that BCBSM's stop-loss insurance became more profitable after it began offering the discount. *Id*.

Plaintiff Wesco is a chain of gas station convenience stores in Michigan that sponsors a self-funded plan for its employees. *Id.* ¶¶ 27-29, PageID.9. Wesco allegedly purchased both claims processing services and stop-loss insurance from BCBSM until 2023. *Id*. ¶¶ 127, 134-35, PageID.32, 33. In December 2011, Wesco allegedly entered into a claims processing contract with BCBSM including a fee of $4 PCPM if Wesco purchased stop-loss insurance from a different carrier. *Id*. ¶ 142, PageID.34. The fee allegedly increased to $6 PCPM in December 2018 and $8 PCPM in December 2019. *Id*. ¶¶ 143-44, PageID.35. Wesco and BCBSM renewed their contract every year until the end of 2022 when Wesco transitioned to another carrier for both claims processing services and stop-loss insurance. *Id.* ¶¶ 134, 145-46, PageID.33, 35. Wesco never paid any administrative fee for stop-loss insurance to BCBSM because it never purchased stop-loss insurance from a different carrier. *Id.*

Plaintiff Utility Workers Union of America National Health and Welfare Fund ("UWUA Fund") is a fund that sponsors a self-funded plan for members of the union.

7

*Id*. ¶¶ 30-31, PageID.10. Prior to January 2016, UWUA Fund purchased a fully-insured plan from BCBSM. *Id.* ¶ 149, PageID.35. UWUA Fund switched to a self-funded plan and began purchasing both claims processing services and stop-loss insurance from BCBSM in January 2016. *Id.* ¶¶ 150-51, 153, PageID.36. UWUA Fund's contract with BCBSM allegedly included the administrative fee, and it renewed the contract each year. *Id.* ¶¶ 154-55, PageID.36. On January 1, 2024, UWUA Fund transitioned to another stop-loss carrier and allegedly has been paying the stop-loss administrative fee since then. *Id.* ¶ 157, PageID.37.

Plaintiffs purport to bring claims under federal and state antitrust laws, on behalf of a class of self-insured BCBSM customers, alleging that BCBSM has unlawfully "tied and/or bundled its stop-loss insurance products with the sale of its [claims processing] products and services." *Id.* ¶¶ 285, 301, 311, PageID.64, 69, 72-73. Plaintiffs allege that BCBSM's bundled discount has harmed competition in the relevant market for stop-loss insurance sold in Michigan,[2] *id.* ¶¶ 171-72, Page ID.40, by "forcing" competing stop-loss carriers to "discount their prices of stop-loss insurance" and "assum[ing] the cost of BCBSM's Penalty Fee" to compete with BCBSM's discounts, *id.* ¶¶ 233, 251, 303, PageID.52-53, 57, 70. Importantly, Plaintiffs have failed to identify *any* stop-loss carriers that have been unable to

---

[2]    BCBSM disputes the alleged relevant product and geographic markets, and whether BCBSM possesses market power in those markets. But the Court need not reach this dispute because Plaintiffs have failed to allege a viable antitrust claim.

compete for stop-loss insurance in Michigan as a result of BCBSM's bundled discounts. In fact, Plaintiffs allege that both named Plaintiffs—Wesco and UWUA Fund—recently switched to competing stop-loss carriers. *Id*. ¶¶ 145, 157, PageID.35, 37.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that does not plead enough facts, as distinct from mere legal conclusions, to show that the claim is "plausible on its face" must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59, 570 (2007). Courts "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig*., 583 F.3d 896, 903 (6th Cir. 2009) (cleaned up). "[F]ederal courts have been 'reasonably aggressive' in weeding out meritless antitrust claims at the pleading stage," in part "to avoid the potentially enormous expense of discovery" in antitrust cases. *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 450 (6th Cir. 2007) (citations omitted); *Twombly,* 550 U.S. at 559.

## ARGUMENT

Plaintiffs' antitrust claims should be dismissed for at least five reasons.[3] *First*,

---

[3]     Plaintiffs asserts claims under Section 1 of the Sherman Act and Section 2 of

BCBSM's bundled discount on claims processing services and stop-loss insurance is not an antitrust violation because Plaintiffs affirmatively pled and admit in their complaint that BCBSM's discounts did not result in below-cost prices for stop-loss insurance. *Second*, for the same reason, Plaintiffs are unable to satisfy their threshold standing burden of establishing antitrust injury. *Third*, to the extent Plaintiffs maintain that BCBSM's discounts constitute traditional tying, such a claim must be dismissed because customers may purchase claims processing services and stop-loss insurance separately. *Fourth*, Plaintiff Wesco lacks antitrust standing for the separate reason that it has never paid any alleged "penalty fee." *Finally*, Plaintiffs' claims are barred by the applicable four-year statute of limitations.

Because Plaintiffs have affirmatively pleaded facts negating and disproving liability, amendment of the pleadings would be futile, and the Court should dismiss Plaintiffs' claims with prejudice. *ABS Indus., Inc.*, 333 F. App'x at 997.

## I.    Plaintiffs Fail to Allege a Bundling Claim.

Plaintiffs' complaint alleges that the discount BCBSM makes available to customers who purchase both claims processing services and stop-loss insurance

---

the Michigan antitrust statute. "Because Michigan antitrust law follows federal precedents, [any analysis] regarding the federal antitrust claims applies equally to" Plaintiffs' Michigan antitrust claim. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery*, 185 F.3d 606, 619 n.4 (6th Cir. 1999); *see also* Mich. Comp. Laws Ann. § 445.784 ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes . . . .").

violates the antitrust laws. Plaintiffs' bundling claim should be dismissed because Plaintiffs affirmatively allege facts that are inconsistent with controlling Sixth Circuit law on such bundled discounts.

As a threshold matter, Plaintiffs' attempt to spin BCBSM's bundled discount as a "penalty" is misleading factually and irrelevant legally. "Whether viewed as a bundling discount . . . or as a penalty," consumers pay less when they purchase both claims processing services and stop-loss insurance from BCBSM. *Suture Express, Inc.*, 851 F.3d at 1035-36. Therefore, courts employ identical analyses of bundling claims, regardless of whether they are framed as a "bundled discount" or a "penalty fee." *See, e.g., Simon and Simon, PC v. Align Tech. Inc.*, No. 19-506, 2020 WL 1975139, at *8 (D. Del. 2020) (Ex. 12) (rejecting plaintiffs' argument that an alleged penalty fee "is even more plainly harmful because the customer gets no discount with the bundle and, instead, faces a penalty for breaking the bundle") (citation omitted).

And there can be no dispute about the analysis this Court should employ. It has been black letter law for decades that "[l]ow prices benefit consumers *regardless of how those prices are set*, and so long as they are above predatory levels, they *do not threaten competition*." *Brooke Grp. Ltd.*, 509 U.S. at 223 (quoting *Atl. Richfield*, 495 U.S. at 340) (emphasis added). In order to show that prices are predatory, a plaintiff "must prove that the prices complained of are below an appropriate measure

11

of its rival's costs." *Id*. at 222. Any other result would flip the antitrust laws on their

head:

> The exclusionary effect of prices above a relevant measure of cost either reflects the lower cost structure of the alleged predator, and so represents competition on the merits, or is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting. To hold that the antitrust laws protect competitors from the loss of profits due to such price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. *The antitrust laws require no such perverse result*.

*Id*. (emphasis added) (citation and quotations omitted). Indeed, "'cutting prices in

order to increase business often is the very essence of competition.' In cases seeking

to impose antitrust liability for prices that are too low, mistaken inferences are

'especially costly, because they chill the very conduct the antitrust laws are designed

to protect.'" *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.,* 555 U.S. 438, 451 (2009)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 594

(1986)).

The Sixth Circuit applied the Supreme Court's test in *Collins Inkjet*. The court

explained that "[c]ompetitive sellers generally aim to make their products

significantly cheaper than their competitors', and there is nothing inherently wrong

with doing so via differential pricing." 781 F.3d at 270-74 (citing *Cascade Health

Sols. v. PeaceHealth*, 515 F.3d 883, 906 (9th Cir. 2008)). Instead, the court held that

a bundled discount for ink and printheads may be "unlawful only if it might have

forced a more efficient competitor out of business." *Id*. at 270. In other words, bundled discounts only "become[] equivalent to an unlawful tying arrangement when the price discount, as applied to the original price of the tied product, in effect lowers the price of the tied product below the seller's cost."[4] *Id*. at 271. In such situations, an equally efficient competitor for the tied product may be unable to compete because they cannot "compensate buyers for the forgone tying product discount." *Id*. at 274.

As the preeminent antitrust treatise explains, "the great majority of discounting practices are procompetitive." 3 Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, § 749 (Wolters Kluwer, 5th ed. 2025) (Ex. 16). Therefore, there is no "ground for competitive concern" and the discount qualifies for a "safe harbor" unless both: "[1] no other significant firm in the market produces both goods; and [2], when the entire discount is attributed to the good upon which exclusion is claimed, that good's price falls below its relevant cost." *Id*. Finally, even if a discount "flunk[s] the attribution test," it may be "procompetitive or competitively harmless," because this analysis "is only the beginning of the inquiry." *Id*.

---

[4]     Plaintiffs allege that BCBSM's bundled discount is untethered to increased costs associated with providing claims processing services separately from stop-loss insurance. *See, e.g.,* Compl. ¶¶ 225, 227, PageID.50, 51. These allegations are irrelevant to whether BCBSM sells its stop-loss insurance at a loss, as required under the discount attribution standard. *Collins Inkjet*, 781 F.3d at 268.

Courts have dismissed bundled discount claims at the pleading stage where, as here, plaintiffs fail to plausibly allege facts showing that the discount resulted in below-cost pricing. For example, in *Vesta Corp.*, the court dismissed without leave to amend the plaintiff's bundled discount claims because the complaint lacked "factual support for the inference that Defendants priced their payment processing solutions below their own costs" and did not "demonstrate that Defendants would have suffered any losses on their pricing schemes." 129 F. Supp. 3d at 1033-34 (emphasis omitted). The court in *Arista Networks, Inc.* similarly dismissed a bundling claim when the complaint failed to provide detailed cost and pricing information to plausibly infer that the defendant was selling its tied product at a loss. *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 16-cv-00923, 2017 WL 6102804, at *13-14 (N.D. Cal. Oct. 10, 2017) (Ex. 4); *see also Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 412 F. Supp. 3d 1273, 1288 (D. Or. 2019) (dismissing bundling claim where complaint did not allege below-cost pricing); *Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*, No. C09-637Z, 2009 WL 10727790, at *8 (W.D. Wash. Nov. 16, 2009) (Ex. 9) (same); *Eastman v. Quest Diagnostics Inc.*, No. 15-cv-00415, 2016 WL 1640465, at *12 (N.D. Cal. Apr. 26, 2016) (Ex. 6) (same).

Plaintiffs' bundled discount claim must be dismissed because they have not alleged any facts showing that BCBSM sold the "tied" product, here stop-loss insurance, *at a loss* as a result of the price discount. Instead, Plaintiffs have

14

affirmatively pleaded the *opposite*—that BCBSM generates profits from its stop loss business. For example, Plaintiffs allege that "BCBSM's stop-loss insurance business is considered *far more profitable* than any other leading stop-loss insurer in the country" with "three times more profit than the average stoploss carrier." Compl. ¶¶ 206-07, 248, PageID.46, 56 (emphasis added). Plaintiffs' concession that BCBSM sold stop-loss insurance for a profit "makes [BCBSM's] bundled discounts legal" under the antitrust safe harbor because they would not "have the potential to exclude a hypothetical equally efficient [stop-loss provider]." *Collins Inkjet*, 781 F.3d at 273 (emphasis added).

Plaintiffs' claim also should be dismissed because BCBSM's discount satisfies the second "safe harbor" criteria, namely, that other firms in the market sell both claims processing services and stop-loss insurance. Areeda and Hovenkamp, *Antitrust Law* § 749; *see also* Herbert Hovenkamp, Principles of Antitrust, § 10.4c (West Academic, 2d ed. 2021) (Ex. 17) ("[I]f other rivals make the same full bundle then they should be able to match the discounter's pricing scheme and there will be no bundling[,]" and "[i]f other rivals can readily match the discount, then competition is not lessened."). Plaintiffs allege that there are at least five companies that sell both claims processing services and stop-loss insurance in Michigan today, Compl. ¶ 167, Page ID.39, and even allege that other firms offer bundled discounts as well, *id*. ¶ 228, PageID.51. As *Collins Inkjet* makes clear, the discount attribution

15

standard is based on the concern that an equally efficient seller of the tied product "who does not also produce the tying product" may be "unable to attract customers who additionally require the tying product." 781 F.3d at 272. This concern does not exist where, as here, other companies sell *both* the tied (stop-loss insurance) and tying (claims processing services) products. For example, in *Aerotec International, Inc. v. Honeywell International, Inc*., the Ninth Circuit rejected bundled discount claims where multiple companies sold both parts and service for aircraft. 836 F.3d 1171, 1175-76 (9th Cir. 2016). The court reasoned that:

> [T]he discount attribution test does not apply in circumstances like this where the parties offer the same bundle of goods and services. . . . the discount attribution test *only applies* where one of the competitors produces fewer goods or services than the other competitor. . . . It is the fact that the bundling competitor has *exclusive capacity* to "bundle" multiple products and absorb the cost of the total discount without experiencing a decline in profits that gives rise to the possibility that it could force out a "hypothetical equally efficient producer of the competitive product."

*Id*. at 1186-87 (emphasis added) (citation omitted). Because Plaintiffs affirmatively plead facts showing both (1) that BCBSM's stop-loss business is profitable and (2) that BCBSM does not have the "exclusive capacity to bundle" claims processing services and stop-loss insurance, Plaintiffs' claims should be dismissed. *Id*.

## II.    Plaintiffs Fail to Allege Antitrust Injury.

Plaintiffs' failure to plausibly plead antitrust injury is rooted in the same deficiencies that doom Plaintiffs' bundling claims, and serves as an independent

ground for dismissal.

While "[s]tanding, in a conventional Article III sense, requires just proof of actual injury, causation, and redressability," *NicSand, Inc.*, 507 F.3d at 449, plaintiffs asserting antitrust claims must specifically allege antitrust standing, which is narrower than constitutional standing and requires alleging an antitrust injury. *See Cargill, Inc. v. Monfort of Colo, Inc.*, 479 U.S. 104, 110 n.5 (1986) (noting that a "showing of antitrust injury is necessary, but not always sufficient, to establish [antitrust] standing."). Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *N.W.S. Mich.*, 58 F. App'x at 129 (quoting *Brunswick Corp.*, 429 U.S. at 489). The existence of "antitrust standing is a threshold, pleading-stage inquiry." *NicSand*, 507 F.3d at 450 (collecting Sixth Circuit cases that dismissed lawsuits for lack of antitrust standing under Rule 12(b)(6)).

A plaintiff challenging discounted prices cannot plead antitrust injury without facts showing that the prices resulted in predatory, below-cost pricing. For example, in *N.W.S. Michigan,* the plaintiff claimed that discounts offered by a wine wholesaler violated the antitrust laws. 58 F. App'x 127. The district court dismissed plaintiff's claims and the Sixth Circuit affirmed, finding that the plaintiff's failure to allege that the discount resulted in below-cost pricing "*requires dismissal*" because "only predatory pricing has the requisite anticompetitive effect to establish antitrust

injury." *Id.* (affirming dismissal) (citation and quotations omitted); *see also Anesthesia Assocs. of Ann Arbor, PLLC v. Blue Cross Blue Shield of Mich.*, No. 20-cv-12916, 2021 WL 4169711, at *10 (E.D. Mich. Sept. 14, 2021) (Ex. 3) (dismissing a Complaint for failure to establish antitrust injury where "Plaintiff states that Defendant has profited from low reimbursement rates—not that [Defendant] has suffered losses now so that they will be able to generate big profits later"). The Sixth Circuit in *Collins Inkjet* reached the same conclusion that the discount attribution standard also "provides the test for determining whether a plaintiff challenging a competitor's tie that is enforced through [a bundled discount] has antitrust standing." 781 F.3d at 273; *see also Atl. Richfield*, 495 U.S. at 340-41 (When the bundled discounts "are not predatory, any losses flowing from them cannot be said to stem from an *anticompetitive* aspect of defendant's conduct.") (emphasis in original).

Plaintiffs here fail to allege any facts showing that BCBSM's discounted prices resulted in below-cost pricing, and therefore they have failed to satisfy their threshold pleading burden. The Court's analysis can (and should) end there.

Moreover, while Plaintiffs make various conclusory assertions about supposed harm to competition among stop-loss carriers, Compl. ¶¶ 232-76, PageID.52-62, Plaintiffs allege no actual *facts* showing that any stop-loss carrier has been unable to compete in Michigan as a result of BCBSM's bundled discount. Instead, Plaintiffs allege that BCBSM's low prices "forced" competing stop-loss

carriers to "discount their prices of stop-loss insurance." *Id*. ¶¶ 233, 251, PageID.52-53, 57. Such "cutting prices . . . is the very essence of competition." *Brooke Grp.*, 509 U.S. at 226. BCBSM customers are free to purchase claims processing services and stop-loss insurance from any carrier, and, in fact, both named Plaintiffs—Wesco and UWUA Fund—recently switched from BCBSM to other stop-loss carriers. *Id*. ¶¶ 145, 157, PageID.35, 37. Nor have Plaintiffs alleged any facts showing that their actual prices for purchasing both claims processing services and stop-loss insurance have increased as a result of BCBSM's discounts. *Cf. Pogue v. Int'l Indus., Inc*., 524 F.2d 342, 344 (6th Cir. 1975) ("In the typical tying arrangement, the victim's injury lies in the higher prices that must be paid for the tied product as a result of the seller's economic power in the tying product market."); *Sheet Metal Workers Nat. Health Fund v. Amgen Inc*., No. 07-5295, 2008 WL 3833577, at *6-7 (D.N.J. Aug. 13, 2008) (Ex. 11) (finding that plaintiff failed to plead that "the tying arrangement has caused it to face a significant threat of paying more for [two products] as a bundle than it would pay for the products individually absent the tie"). Plaintiffs' barebones allegation that BCBSM merely sells two products together at a lower price than they are sold separately, if accepted, would turn the antitrust laws into "a tool for keeping prices high." *Brooke Grp.,* 509 U.S. at 226-27. Plaintiffs' own factually pleaded allegations and admissions contradict their legal conclusion that BCBSM's bundled

discount harmed competition and caused them antitrust injury, and therefore their claims should be dismissed.

### III.   Plaintiffs Fail to Allege a Traditional Tying Claim.

To the extent Plaintiffs assert a traditional tying claim instead of a bundling claim, Compl. ¶¶ 301, 311, PageID.69, 72-73, such a claim fails out of the gate because Plaintiffs affirmatively plead that BCBSM customers can (and do) purchase claims processing services and stop-loss insurance separately.

A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *N. Pac. Ry. Co. v. United State*s, 356 U.S. 1, 5-6 (1958). A plaintiff must establish that the defendant has market power in the tying product market and that the buyers of the tying product are coerced to buy the tied product. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 11-12 (1984).

Here, Plaintiffs allege no coercion. Their Complaint makes clear that buyers have a choice. Indeed, named Plaintiff UWUA Fund purchases claims processing services from BCBSM but transitioned to another stop-loss carrier. Compl. ¶ 157, PageID.37. BCBSM does not require that customers purchase stop-loss insurance in order to purchase claims processing services. Because buyers may purchase both products separately, any traditional "tying" claim must be dismissed. *See, e.g.,*

20

*Sharwell*, 2000 WL 1478341, at *1 (dismissing a tying claim when, under the complaint, the defendant did not require the purchase of the tied product with the tying product); *Midwest Agency Servs., Inc. v. JP Morgan Chase Bank, N.A*., No. 09-165, 2010 WL 935450, at *6 (E.D. Ky. Mar. 11, 2010) (Ex. 8) (same); *In re Time Warner Inc. Set-Top Cable Television Box Antitrust Litig*., No. 08 mdl 1995, 2010 WL 882989, at *8 (S.D.N.Y. Mar. 5, 2010) (Ex. 14) (same); *Strawflower Elecs., Inc. v. Radioshack Corp*., No. 05-0747, 2005 WL 2290314, at *8-9 (N.D. Cal. Sept. 20, 2005) (Ex. 13) (same).

## IV.   Plaintiff Wesco Fails to Allege an Injury in Fact.

Plaintiff Wesco should be dismissed for lack of antitrust standing because it fails to allege an injury in fact.

Similar to Article III standing, a plaintiff must establish an injury in fact for antitrust standing. *Southaven Land Co. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1083-85 (6th Cir. 1983). "To establish an injury in fact, plaintiffs must show that they suffered 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Bearden v. Ballad Health*, 967 F.3d 513, 516 (6th Cir. 2020). In other words, plaintiffs must show (1) "that they are affected in a personal and individual way" and (2) "that they have already suffered an injury or that a threatened injury certainly impending." *Id*. (citations and quotations omitted). "Each named class representative 'must allege an

individual injury; they cannot piggyback off the injuries suffered by other, unidentified members of the class.'" *Norman v. FCA US, LLC*, 696 F. Supp. 3d 359, 374 (E.D. Mich. 2023) (quoting *Fox v. Saginaw Cnty.*, 67 F.4th 284, 296 (6th Cir. 2023)).

Here, the Complaint alleges that BCBSM's claims processing consumers must pay an administrative fee when they purchase stop-loss insurance from another carrier. Compl. ¶¶ 7-8. Even assuming this fee is unlawful (it is not), Wesco never actually paid the fee because it never purchased another provider's stop-loss insurance while using BCBSM's claims processing services. *Id*. ¶¶ 142-45. Wesco no longer employs BCBSM as its claims processing provider, *id*. ¶ 145, so it also cannot plausibly allege that it faces any imminent threat of paying BCBSM's penalty fee. Wesco's injury is "conjectural and hypothetical" at best, which is insufficient to establish injury in fact. *Bearden*, 967 F.3d at 516. And it cannot pursue its claims based on an alleged harm suffered by UWUA Fund or the proposed class members. *Norman*, 696 F. Supp. 3d at 374. Plaintiff Wesco and its claims should be dismissed. *See NicSand*, 507 F.3d at 450 (collecting cases dismissing complaints for failure to establish antitrust standing).

## V.   Plaintiffs' Claims are Time-Barred.

Plaintiffs' antitrust claims should be dismissed for the independent reason that they are based on alleged conduct that occurred between 8 and 13 years before this

lawsuit and are thus barred by the applicable four-year statute of limitations.

Claims brought under both the federal Sherman Act and Michigan antitrust statute are subject to four-year statute of limitations from the date when "the cause of action accrued." *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 598 (6th Cir. 2014); Mich. Comp. Laws Ann. § 445.781. "A cause of action accrues and the limitations period commences each time a defendant commits an act which injures the plaintiff's business." *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 848 (6th Cir. 1990).

Here, Plaintiffs allege that BCBSM first introduced the administrative fee at issue 14 years ago, in 2011. Compl. ¶¶ 7-8, PageID.4-5. According to Plaintiffs, both Wesco and UWUA first entered into a contract with the BCBSM's bundled discount in 2011 and 2016, respectively, which are also well outside the limitations period. *Id.* ¶¶ 142, 150-51, 155, PageID.34, 36. Even taking the latest possible date, Plaintiffs' claims had to have been brought by 2020, over four years ago.

Recognizing the staleness of their allegations, Plaintiffs allege that BCBSM has committed a "continuing violation" in the form of a new "overt act" whenever (1) it "executed a new agreement" with Plaintiffs that included the bundled discount, or (2) it received payments under such agreements. *Id.* ¶ 280, PageID.63. Such allegations are insufficient to establish a continuing violation.

First, renewal of the bundled discount is a mere reaffirmation of a previous act and does not retrigger a new limitations period. "[T]he Sixth Circuit has repeatedly rejected invocations of the continuing-violations defense that are mere reaffirmations of a previous act." *Z. Techs. Corp.*, 753 F.3d at 600; *see also Choh v. Brown Univ.*, 23-cv-00305, 2024 WL 4465476, *11 (D. Conn. Oct. 10, 2024) (Ex. 5) (rejecting plaintiffs' argument that statute of limitations restarted each time defendants updated their agreements each year); *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 272-73 (S.D.N.Y. 2024) ("[The] Complaint describe[d] a repeated manifestation of the same overt act-enforcement o[f] a limit on the number of line items permitted in header bidding-and not new and independent acts."); *Madison Square Garden, L.P. v. Nat'l Hockey League,* No. 07-cv-8455, 2008 WL 4547518, at *10 (S.D.N.Y. Oct. 10, 2008) (Ex. 7) (dismissing antitrust challenge to NHL licensing agreements, finding that renewal of those agreements did not constitute "overt acts" restarting the limitations period).

Second, BCBSM's alleged receipt of payments under the bundled discount agreements is also insufficient to establish a continuing violation. Compl. ¶ 280, PageID.63. "'Receipt of profits from an illegal contract by antitrust defendant is not an overt act of enforcement which will restart the statute of limitations.'" *Z. Techs. Corp.*, 753 F.3d at 600 (quoting *Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989)).

24

The Complaint is clear that Plaintiffs knew about the inclusion of an administrative fee in Plaintiffs' claims processing services and stop loss insurance agreements at least by 2011 and 2016 respectively, because it was included in the contracts that Plaintiffs executed. Compl. ¶¶ 142-145, 155, PageID.34-35, 36. Plaintiffs could have brought their claims within the applicable four-year statute of limitations. Since they did not, their claims are time barred and therefore should be dismissed. *Stein v. Regions Morgan Keegan Select High Income Fund, Inc*., 821 F.3d 780, 786 (6th Cir. 2016) ("When the allegations in the complaint affirmatively show that the claim is timed-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate.") (citation and quotations omitted).

## CONCLUSION

For the foregoing reasons, BCBSM respectfully requests the Court dismiss Plaintiffs' Complaint. Moreover, because Plaintiffs cannot cure the defects in their Complaint with further amendment, the Complaint should be dismissed with prejudice. *See ABS Indus*., 333 F. App'x at 997.

Dated: January 28, 2025                Respectfully submitted,

/s/ Justin W. Bernick
Justin W. Bernick (*admitted in E.D. Mich.,*
Washington, D.C. Bar No. 988245)
Jennifer Fleury (*admitted in E.D. Mich.*,
Washington, D.C. Bar No. 187503)
Molly Pallman (*admitted in E.D. Mich.*,
Washington, D.C. Bar No. 1617494)
**HOGAN LOVELLS US LLP**

555 13th Street, NW
Washington, DC 20004
T: (202) 637-5600
F: (202) 637-5910
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com
molly.pallman@hoganlovells.com

Sarah L. Cylkowski (P75952)
Alexandra C. Markel (P81705)
**BODMAN PLC**
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
T: (313) 259-7777
F: (313) 393-7579
scylkowski@bodmanlaw.com
amarkel@bodmanlaw.com

Michelle R. Heikka (P66122)
**BLUE CROSS BLUE SHIELD OF MICHIGAN**
600 East Lafayette, Suite 1925
Detroit, MI 48226
T: 313-983-2640
mheikka@bcbsm.com

*Counsel for Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2025, I caused the foregoing document

to be served via the Court's ECF system on all attorneys of record.  I declare under

penalty of perjury that the foregoing statement is true and correct.


/s/ Sarah L. Cylkowski
Sarah L. Cylkowski